**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002469
29-OCT-2014
08:22 AM**

NO. CAAP-13-0002469

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
SUSAN CHIN, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 12-1-0331)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Defendant-Appellant Susan A. Chin (**Chin**) appeals from the July 19, 2013 "Judgment of Conviction and Sentence" (**judgment**) entered in the Circuit Court of the First Circuit[1] (**circuit court**). Chin was found guilty of Count 1, theft in the first degree under Hawaii Revised Statutes (**HRS**) §§ 708-830.5(1)(a) (Supp. 2013)[2] and 708-830(1) (Supp. 2006)[3]; and

---

[1]     The Honorable Karen S. S. Ahn presided.

[2]     In pertinent part, HRS § 708-830.5 provides:

   §708-830.5  **Theft in the first degree.**  (1) A person commits the offense of theft in the first degree if the person commits theft:

      (a)   Of property or services, the value of which exceeds $20,000;

      . . . .

      (2) Theft in the first degree is a class B felony.

[3]     In pertinent part, HRS § 708-830, provides:

   §708-830  **Theft.**  A person commits theft if the person
                                                      (continued...)

Counts 4 and 6, money laundering under HRS § 708A-3(1)(a)(ii) (Supp. 2013).[4] Chin was sentenced to ten years of imprisonment for Counts 1 and 4; five years for Count 6; with sentences to run concurrently. Chin was also ordered to pay restitution in the amount of $523,762.15 and an assessment for the cost of a DNA analysis.

Chin contends: (1) the circuit court erred by denying her oral Motion for Judgment of Acquittal, first made at trial on March 21, 2013; (2) the circuit court erred by denying her Motion for a New Trial, filed on April 17, 2013, even after learning the jury foreperson had communicated with Chin's chief witness during trial; and (3) there was insufficient evidence to establish her guilt beyond a reasonable doubt in Counts 1, 4, and 6.

---

[3](...continued)
does any of the following:

    (1)    Obtains or exerts unauthorized control over property. A person obtains or exerts unauthorized control over the property of another with intent to deprive the other of the property.

[4]    In pertinent part, HRS § 708A-3, provides:

    **§708A-3 Money laundering; criminal penalty.** (1) It is unlawful for any person:

    (a)    Who knows that the property involved is the proceeds of some form of unlawful activity, to knowingly transport, transmit, transfer, receive, or acquire the property or to conduct a transaction involving the property, when, in fact, the property is the proceeds of specified unlawful activity:

    . . . .

    (ii)    Knowing that the transportation, transmission, transfer, receipt, or acquisition of the property or the transaction or transactions is designed in whole or in part to:

    (A)    Conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

    (B)    Avoid a transaction reporting requirement under state or federal law[.]

2

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Chin's points of error as follows:

Chin first contends there was insufficient evidence to find her guilty of Count 1, first degree theft, based on Katherine K. Ganeko's (**Katherine**) uncontradicted testimony that she gave Chin power-of-attorney to conduct her affairs; that Katherine knew Chin had opened joint accounts; that Katherine testified she wanted to live with Chin and have Chin responsible for her caretaking; that Katherine received Chin's caretaking services; that Katherine was treated as part of Chin's family; and that Katherine did not state that Chin had refused to return her money.

A person commits theft if they "[o]btain[] or exert[] unauthorized control over the property of another with intent to deprive the other of the property." HRS § 708-830. A person commits theft in the first degree if they commit theft "[o]f property or services, the value of which exceeds $20,000[.]" HRS § 708-830.5(1)(a).

The standard of review for Chin's appeal from the circuit court's denial of her motion to acquit is whether "the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." State v. Hicks, 113 Hawaiʻi 60, 69, 148 P.3d 493, 502 (2006) (quoting State v. Maldonado, 108 Hawaiʻi 436, 442, 121 P.3d 901, 907 (2005)).

Chin contends she should have been acquitted of first degree theft under Count 1 because she acted under a power-of-attorney that included a provision that ratified all of her acts as agent for Katherine. According to Chin, her control over house sale proceeds was not "unauthorized" within the meaning of HRS § 708-830 because she held a power-of-attorney, and therefore she did not commit theft in the first degree.

The assumption of a power-of-attorney creates a fiduciary duty in the person assuming that power. Breaches of

fiduciary duties are not authorized uses of that power. Under HRS Chapter 346, Part X "Adult Protective Services," the misuse of a power-of-attorney is one kind of breach of a fiduciary duty:

> §346-222 **Definitions.** For the purposes of this part:
>
> . . . .
>
> "Financial exploitation" means the wrongful taking, withholding, appropriation, or use of a vulnerable adult's money, real property, or personal property, including but not limited to:
>
> (1) The breach of a fiduciary duty, such as the misuse of a power of attorney or the misuse of guardianship privileges, resulting in the unauthorized appropriation, sale, or transfer of property[.]

HRS § 347-222 (Supp. 2013) (emphasis added).

The instrument creating a power of attorney is strictly construed to authorize only those actions expressly provided. Where a power-of-attorney authorizes an agent broad powers to "perform every act, deed or thing that [the principal] might or could do if personally present" and specifically authorizes that agent to deal with the principal's real property "as [the agent] shall think fit[,]" this court has determined that the power-of-attorney did not "expressly authorize" the agent to make gifts of the principal's property. Kunewa v. Joshua, 83 Hawai'i 65, 72, 924 P.2d 559, 566 (App. 1996); see also State v. Crowder, 11 P.3d 828, 832 (2000), as amended (Wash. App. Oct. 27, 2000) (holding that the agent's durable power of attorney did not authorize her to make gifts of the principal's property).

In Kunewa, this court looked to

> "[w]ell established rules of interpretation of powers of attorney [under which] broad, all-encompassing grants of power to the agent must be discounted." Mercantile Trust Co. v. Harper, 622 S.W.2d 345, 349 (Mo. App. 1981) (citing Restatement (Second) of Agency § 34, cmt. h (1958)). See also Estate of Casey v. Comm'r of Internal Revenue, 948 F.2d [895, 900-01 (4th Cir. 1991)] (where power of attorney expressly authorized agent to transfer principal's assets by sale, lease, or mortgage, but omitted any reference to the power of transfer by gift, the expansive language of the power of attorney would be interpreted to confer only those incidental, interstitial powers necessary to accomplish objects as to which authority has been conferred and not to confer power to make a gift).

Kunewa, 83 Hawaiʻi at 72, 924 P.2d at 566. A gift is "the voluntary transfer of property to another without compensation." Black's Law Dictionary 803 (10th ed. 1979).

The instrument granting Chin power-of-attorney did not expressly authorize Chin to give Katherine's property interests as gifts or to breach any fiduciary duties. Therefore, Chin's conveyance of the proceeds from the sale of Katherine's house to Chin's sons and mother were not authorized under Chin's power-of-attorney.

Viewing record evidence in a light most favorable to the prosecution and in full recognition of the province of the jury as a trier of fact, the record shows Chin deposited proceeds from the sale of Katherine's house into joint accounts with Chin's sons and mother; filed a missing person's report, when family took Katherine away, in which she claimed $76,000 in a joint account funded with the proceeds of the sale of Katherine's house were actually Chin's monies from a pre-existing account; and used $8,834 from a joint account funded by house sale proceeds for a personal car payment. A reasonable mind might fairly conclude Chin was guilty of first degree theft of the proceeds from the sale of the house beyond a reasonable doubt.

In Count 4, Chin was found guilty of money laundering under HRS §§ 708A-3(1)(a)(ii) and 708A-3(4)(b), and subject to sentencing under HRS § 708-3(5)(b), for Chin's substitution of her sister for Chin as a joint account holder on accounts with Chin's sons. To be convicted under HRS § 708A-3(1)(a)(ii), Plaintiff-Appellee State of Hawaiʻi (**State**) was required to show Chin knew the proceeds from the house sale were proceeds from "some form of unlawful activity," and that Chin transported, transferred, received, or acquired the proceeds, or conducted a transaction involving the proceeds, knowing that such action was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity. The State was also required to show that the value of the property transported, transmitted, transferred, received, or acquired was $10,000 or more.

5

Katherine testified she said that she would set aside $200,000 of the house sale proceeds for Chin's sons' education. But as discussed supra, we concluded Chin was not authorized to make gifts of the house sale proceeds by the power-of-attorney. Chin's theft of the house sale proceeds satisfies the first element of money laundering under HRS § 708A-3(1). The record also reflects testimony from bank managers that Chin elected to substitute her sister as the joint account holder with Chin's mother and sons after Chin discovered that Katherine had withdrawn the balance of the joint account held by Chin and Katherine. A bank manager testified that Chin told him Chin's attempts to withdraw monies from the accounts were meant to protect those monies from Katherine. Viewed in a light most favorable to the prosecution, a reasonable mind might fairly conclude Chin's bank transactions were "designed in whole or in part to: [c]onceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[,]" such that Chin was guilty of the second element of money laundering under HRS § 708A-3(1), and that the value of the property at issue was $10,000 or more.

Chin was convicted under Count 6, money laundering under HRS §§ 708A-3(1)(a)(ii) and 708a-3(4)(b), for her use of stolen proceeds to make a payment on her personal car loan. Chin contends she should have been acquitted of Count 6 because she did not conceal or disguise her use of the joint account with her mother (funded with the sale of proceeds from Katherine's house) to satisfy her car payment and that this use of Katherine's funds was consistent with the purpose of taking care of Katherine's transportation needs. Chin had deposited monies from the sale of Katherine's house into a joint account with her mother and wrote a check from that account for $8,834 with the notation "Mercedes Pay off" on the check instrument. As discussed supra, the deposit of house sale proceeds into the joint account with Chin's mother was unauthorized and constituted theft. Viewing the evidence in a light favorable to the prosecution, a reasonable mind might fairly conclude Chin's use of Katherine's funds to pay Chin's car loan was a means of concealing or disguising

Katherine's ownership of the $8,834 so as to constitute money laundering under HRS § 708A-3.

In her third point of error, Chin contends the evidence in the case did not establish beyond a reasonable doubt her guilt as to Counts 1, 4, and 6. The standard of review on appeal for sufficiency of the evidence is substantial evidence. See State v. Matavale, 115 Hawai'i 149, 157-58, 166 P.3d 322, 330-31 (2007). Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992). "[E]ven if it could be said . . . that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the [conviction] will be affirmed." Matavale, 115 Hawai'i at 158, 166 P.3d at 331.

Admitted evidence, declarations, and trial testimony noted above constituted substantial evidence supporting the jury's findings that Chin had committed acts underlying Counts 1, 4, and 6.

Chin's final contention is that the circuit court erred by failing to grant her Motion for a New Trial after learning of juror misconduct. The circuit court found Chin's suggestion that contact between her witness and the juror may have had a significant inappropriate influence upon the deliberative process was "pure speculation." In support of its finding, the circuit court cited State v. Amorin, 58 Haw. 623, 574 P.2d 895 (1978), in which the Hawai'i Supreme Court concluded the assumption that "the rest of the jurors were influenced by the mere knowledge that a juror had looked up the definition of 'insanity' without any indication that they either knew what the definitions were or how the particular juror had voted would be pure conjecture." Amorin, 58 Haw. at 631, 574 P.2d at 900.

> [N]ot all juror misconduct necessarily dictates the granting of a new trial. A new trial will not be granted if it can be shown that the jury could not have been influenced by the alleged misconduct. Rule 52(a) of the Hawaii Rules of Criminal Procedure directs that any error will be harmless and disregarded if it does not affect the substantial rights

> of the complaining party.  Further, it must be shown beyond
> a reasonable doubt that the error was harmless.

Amorin, 58 Haw. at 630, 574 P.2d at 900 (footnote and citations omitted).

As the circuit court found, the only evidence supporting Chin's motion for a new trial was the declaration submitted by her witness.  Chin's witness declared that a juror inquired into employment possibilities, but that the juror did not have any further communication with him after their encounter in the men's bathroom.  Chin argued to the circuit court that her witness's non-responsiveness to the juror's inquiries into employment "may have had a significant inappropriate influence on the deliberative process in this case" and cited Maryland case law holding "[c]ontacts between witnesses and jurors are generally improper because such contacts raise fundamental concerns on whether the jury would reach their verdict based solely on the evidence presented at trial or whether it would be improperly influenced by inappropriate contacts."  Dillard v. State, 3 A.3d 403, 408-09 (Md. Ct. App. 2010) (citations and internal quotation marks omitted).  The facts underlying Dillard concern the following: during lunch recess two jurors patted the State's witness on the back and said, "good job[;]" the trial court discussed the matter with counsel outside of the jury's presence; the defense counsel acknowledged there was no inappropriate State action, but motioned for a mistrial; the trial court allowed the defense counsel to question the State's witnesses as to the incident; and denied the defense counsel's motion for a mistrial or in the alternative to replace one of the jurors.  Dillard, 3 A.3d at 406-07.  Under the Maryland "abuse of discretion" standard of review for rulings on a motion for a mistrial (Allen v. State, 597 A.2d 489, 497 (Md. Ct. Sp. App. 1991)), the Dillard court held that the trial court abused its discretion by failing to "clarify the factual scenario raised by the contact between the jurors and [the State's witness] . . . ."  Dillard, 3 A.3d at 410.

Chin contends the circuit court "refused to conduct such an inquiry" into the juror's motive for violating its prior

8

instruction to the jury not to talk to witnesses in the case, and therefore she is entitled to a new trial. Chin misstates the circuit court's duties to inquire into her allegations of juror misconduct. Chin was required to "make a prima facie showing of a deprivation that could substantially prejudice his or her right to a fair trial by an impartial jury. [The Hawai'i Supreme Court] also suggested that defendant should first present some specific, substantial evidence showing a juror was possibly biased." State v. Yamada, 108 Hawai'i 474, 479, 122 P.3d 254, 259 (2005) (citations omitted and format altered). Had the circuit court "determine[d] that the alleged deprivation [was] substantially prejudicial, the [circuit] court then [became] duty bound to further investigate the totality of circumstances surrounding the alleged deprivation to determine its impact on jury impartiality." Yamada, 108 Hawai'i at 479, 122 P.3d at 259 (citations omitted and format altered). In this case, the circuit court found the nature of the deprivation alleged by Chin did not rise to the level of substantial prejudice as required by State v. Furutani, 76 Hawai'i 172, 873 P.2d 51 (1994), and further noted that the "timing and mixed nature of the verdicts undermine[d Chin's] argument that she was deprived of a fair trial by an impartial jury." Citing Furutani, 76 Hawai'i at 181, 873 P.2d at 60 (holding that the defendant must make a prima facie showing that the juror's misconduct "could substantially prejudice [his or her] right to a fair trial by an impartial jury." (citations and internal quotation marks omitted)).

Hawai'i courts do not disturb a trial court's grant or denial of a motion for a new trial "absent a clear abuse of discretion." State v. Yamada, 108 Hawai'i 474, 478, 122 P.3d 254, 258 (2005). This standard applies in the context of a motion for new trial premised on juror misconduct. Id. According to Chin, the juror's misconduct may have created bias against the defense because her witness's non-responsiveness to the juror's employment inquiry may have influenced the juror inappropriately. Chin's allegation of inappropriate influence is so attenuated by a chain of inferences as to fail to establish the circuit court's finding of "pure speculation" to be a clear

abuse of discretion. We conclude the circuit court did not abuse its discretion by finding that Chin's allegations of juror misconduct did not constitute "substantial prejudice."

Therefore,

IT IS HEREBY ORDERED that the July 19, 2013 "Judgment of Conviction and Sentence" entered in Circuit Court of the First Circuit's is affirmed.

DATED: Honolulu, Hawai'i, October 29, 2014.

On the briefs:

William A. Harrison
(Harrison & Matsuoka)
for Defendant-Appellant.

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge